On the tenth day of April, 1893, the Honorable ANDREW PETERS WISWELL was appointed a Justice of this Court, in place of Mr. Justice William Wirt Virgin, now deceased, and he took his seat on the bench on the twenty-fourth day of the same month, at a session of the court held at Ellsworth in the County of Hancock.

EDWIN H. BOWERS, in equity,

*vs.*

GEORGE H. M. BARRETT, and others.

Knox.    Opinion April 15, 1893.

*Way.    Sidewalk.    Abutters.    Adverse Use.    Towns.    R. S., c. 18, § 17.*

The building of a sidewalk within the limits of a road legally located does not necessarily infringe the rights of an abutting proprietor.

Structural changes made at different points in a way, after a new location, are evidence of an intention to subject the entire extent to public use as the exigencies of travel may require.

Nor need the new servitude be imposed at once on every abutting proprietor.

The control which a town has over its streets, under the paramount authority of the legislature, is not lost or impaired by an omission to pass a general ordinance respecting sidewalks.

Towns may determine the location of sidewalks and prescribe the details of their construction; they may intrust to the discretion of the road commissioner the less important features, or impose upon him the entire responsibility of such matters.

*Pillsbury* v. *Brown*, 82 Maine, 450, affirmed.

ON REPORT.

Bill in equity, heard on bill, answer, proofs and agreed statement.

The case appears in the opinion.

*W. H. Fogler* and *J. E. Moore*, for plaintiff.
*C. E. and A. S. Littlefield*, for defendants.

WHITEHOUSE, J.   The plaintiff brings this bill in equity to restrain the defendants, Barrett and others, as selectmen, and the defendant, Carey, as road commissioner of Rockport, from constructing a sidewalk in front of his premises on the westerly side of Commercial street leading through Rockport village to Camden.   He alleges that the proposed location of the sidewalk is across his lawn, outside of the limits of the street, and that the action contemplated by the defendants is without any lawful authority, and if permitted would cause irreparable injury to his premises.

The defendants deny that the projected sidewalk is to be laid over any portion of the plaintiff's premises, alleging that it is within the located and recorded limits of the street; and claim that their proposed action is fully justified by a vote of the town expressly authorizing the construction of the sidewalk at the point in question.

The case is reported on bill and answer with copies of the records and an agreed statement from which the following facts appear.

In 1840, the county commissioners by legislative authority located a highway across Goose river, and the following year the town of Camden "accepted" the "Goose river road" leading from the bridge located by the county commissioners past the premises now owned by the plaintiff through the present village of Rockport to Rockland.   But there is no record in existence by which the bounds and admeasurements of this way could be located and defined.   It satisfactorily appears, however, that it was soon after wrought and opened to the public, and with the changes hereafter noticed, in later years, under the name of Commercial street became the principal thoroughfare on the southerly side of Goose river in Rockport village, and very largely used for public travel by both teams and foot passengers.

In 1861, a petition was presented to the county commissioners of Knox County representing that "in the highway leading from Camden village over Rockport lower bridge to the old road near Hoboken school house in Camden, thence to Charles Ingraham's in Rockland, there should be alterations, building, locating and establishing of said highway." After due notice the commissioners "adjudged and determined that common convenience and necessity do require the alterations, widenings, locating and establishing of said road as prayed for; and in pursuance of the foregoing adjudication they proceeded to perform the duties required and to *lay out* the following described road." The report then gives a detailed statement of the courses and distances, and a definite description of the limits and boundaries of the road thus "laid out." It extends a distance of ninety-two rods on the northerly side of the bridge and two hundred and seventy-eight rods on the southerly side. It is four rods in width opposite the plaintiff's premises and the westerly line of the way is within four feet of the northerly end and within three feet of the southerly end of the plaintiff's house. In either direction the new location terminated at a previously located county road or highway.

The defendants claim that by force of their proceedings a strip of land twenty-seven feet wide at the southerly end and thirty-two feet wide at the northerly end of the plaintiff's premises, was legally subjected to the public easement, and the street widened to that extent on the westerly side.

It is not in controversy that the location of the sidewalk which the defendants propose to construct is within the limits of the highway thus "widened" and "laid out" in 1861. But the plaintiff contends that these proceedings of the county commissioners were ineffectual and void for several reasons; 1st, because the petition was too indefinite and vague to confer jurisdiction; 2nd, because a petition for an alteration of an old road gives no authority to lay out a new one; 3rd, because the old road must be deemed a town road, and the duty of altering a town road devolves solely upon the selectmen of towns; and 4th, because these proceedings of the county commssioners were

not closed and recorded until the second term after their report was filed.

How far these objections are open to the plaintiff in this proceeding it is not necessary to consider, for in the view here taken of the case a correct decision of it does not depend upon a solution of all or any of the difficulties thus suggested respecting the jurisdiction of the commissioners or the regularity of their proceedings. No objection appears to have been interposed to the validity of these proceedings at the time; no appeal was taken and no proceedings for *certiorari* instituted. On the northerly side of the river, the owners of abutting lots accepted the damages awarded, amounting in the aggregate to $220. A building standing upon one of these lots within the limits of the new location, was removed, the lots upon the easterly side of the road cut down, and the fences moved back on to the lots, to conform to the line of the new location. South of the plaintiff's lot, on the same side of the street, the new location cuts off more or less from fifteen lots.

About the year 1871, on the westerly side of the road leading southerly from the river, a sidewalk was built over a ledge by the abutters, who were authorized by the town to appropriate so much of their highway tax as was necessary for that purpose, and this walk has since been maintained and kept in repair by the town. The southern terminus of this sidewalk is about five rods from the plaintiff's lot, and with this, the projected sidewalk over the plaintiff's lot is designed to be connected. All of the abutters along this sidewalk over the ledge have maintained bank walls, upon which terraces have been made running back from the street. In 1884, the town made an excavation in the ledge within the limits of the new location, and thus widened the street for the purposes of public travel to the extent of ten or fifteen feet.

Thus after a clear and definite description of the bounds and admeasurements of this way had been recorded in 1861, all adversely interested acquiesced in the location then made for thirty-one years, and the way was used for public travel with-

out interruption and maintained and kept in repair by the town the same as before that location, except that actual modifications were made as above stated by removing obstructions and widening the traveled way as the needs of public travel seemed to require.

It is undoubtedly accepted as a general rule that when a public or private easement is sought to be established by adverse use alone, its limitations will be determined by what is actually used and enjoyed. But in *Sprague* v. *Waite*, 17 Pick. 309, Chief Justice Shaw said : "If it is intended to say in regard to ancient highways, that the right of the public is limited to that portion of the highway usually called the traveled path, . . . it is a misapplication of the rule. Where a tract three or four rods wide, such as is usually laid out as a highway, has been used as such, although twenty or thirty feet only have been used as a traveled path, still this is such a use of the whole as constitutes evidence of the right of the public to use it as a highway, by widening the traveled path, or otherwise, as the increased travel and the exigencies of the public may require."

The principle involved in this decision was further developed and the correct rule formulated in the recent case of *Pillsbury* v. *Brown*, 82 Maine, 450. It was there held that when a way is commenced under an actual and recorded location clearly defining its width, though the proceedings may not have been in all particulars strictly conformable to law, "the use is presumed to be co-extensive with the location, precisely as possession under an invalid deed is presumed to be co-extensive with the land purporting to have been conveyed by it." In the opinion, Judge WALTON says : "The true rule of law is this, that after the lapse of twenty years, accompanied by an adverse use, a location *de facto*, becomes a location *de jure*."

It is contended by the plaintiff, however, that *Pillsbury* v. *Brown* is clearly distinguishable from the case at bar, because in that case the use of the way originally commenced and afterward continued by virtue of the location there in question, while in this case a way had existed and been used for nearly twenty years before the proceedings of the commission-

ers in 1861. It is accordingly claimed that the travel upon the way thereafter was but a continuation of the prior use and in no way founded upon the recorded location of 1861; and that the only easement the public acquired in the plaintiff's land had its origin in the "acceptance" of a way by the town in 1841.

But in the light of the facts already stated, it is not perceived that this distinction is a material one in this case. The important structural changes made at different points in the way after the new location, were unmistakable evidence of an intention to subject the entire extent of it to public use as the exigencies of travel might require. It was not necessary that a new form of servitude should at once be imposed on every abutting lot throughout the length of the new location. Using any part of the four rods of the road was in effect using the whole of it. As stated by PETERS, C. J., in *Heald* v. *Moore*, 79 Maine,. 274, "the widened road became a new road. . . . The moment the traveler passed over the usual traveled track afterwards, the new road, all of the road, became dedicated to the public use.""

For thirty-one years there had been no occasion to widen the traveled way in front of the plaintiff's house. But in the progressive development of public enterprises and improvements,. increased facilities for travel and new modes of using the high-ways and streets have been demanded. In the summer of 1892 an electric railway was duly located on this street past the plaintiff's premises, the westerly line of it being practically identical with the westerly line of the street as then actually wrought and used. Prior to this time, the plaintiff's lot being higher than the street, a bank wall had been maintained in front of it on the line of the street as then used, but in constructing the railway this wall was removed with the plaintiff's consent, and the embankment newly graded and sodded. At the front of the house the lot is from nine to eleven feet above the grade of the street as now wrought, and slopes down to the bank, the top of which is about five feet above the present grade.

The building of the street railway also made it necessary to remove the only sidewalk then existing upon this street except the one over the ledge above described. Thereupon a town

meeting was held in the town of Rockport, July 6, 1892, "to see if the town will vote to locate the sidewalk on Commercial street in said Rockport, from Hoboken school house to the iron bridge, on the westerly side of said street, and instruct the road commissioner to build said walk at once from said school house to E. H. Bower's house," and it was voted that "the sidewalk should be located and built upon the right hand side of Commercial street from the iron bridge to Hoboken school house, and instruct the road commissioner to build it at once."

It is not in dispute that the location of the sidewalk described in this vote extends across the lot occupied by the plaintiff on the westerly side of the street, and that it is proposed to construct it wholly within the limits of the street as "widened" and "laid out" in 1861. But the plaintiff still contends that this vote is not sufficient authority for the construction of the sidewalk, because it does not prescribe how much of the street shall be used for that purpose, and because the town has not by any ordinance or by-law set off any portion of the street as a sidewalk.

The location of the proposed sidewalk is within the limits of the highway, and when constructed it will still be a part of the highway. In *Hunt* v. *Rich*, 38 Maine, 195, the power of a highway surveyor to change the course of travel within the located limits of a highway, by virtue of his official authority alone, was distinctly recognized; and in *Cyr* v. *Dufour*, 68 Maine, 492, where there had been an alteration of an existing way, the action of the highway surveyor in preparing the newly located portion for public travel was sustained by the court, although the work was done without the authority of a vote of the town or special directions from the selectmen. The provisions of R. S., c. 3, § 59, par. VI, that "towns may make by-laws or ordinances for setting off portions of their streets for sidewalks," &c., and of § 17, c. 18, R. S., of similar purport, were designed to confer a power or capacity to do the acts mentioned. They are not mandatory or restrictive. The control which a town has over its streets under the paramount authority of the legislature is not lost or impaired by an omis-

sion to pass a general ordinance respecting sidewalks. That control involves duties and responsibilities which under our statutes are largely delegated to highway surveyors and road commissioners. These officers, however, are amenable to the instructions of the town. By a vote passed at a legal meeting the inhabitants may determine the exact location of a sidewalk and prescribe all the details of its construction; they may intrust the less important features to the discretion of the road commissioner; or may impose upon him the entire responsibility.

In the case at bar, the vote of the town locates the sidewalk on the westerly side of the street, and instructs the commissioner to build it at once. It was competent for the town to intrust to the commissioner the execution of the details. The vote is sufficient to authorize the construction of the sidewalk as contemplated.

The proposed action of the road commissioner, in building a sidewalk within the limits of the highway with the co-operation of the selectmen and in obedience to a legal vote of the town, does not necessarily involve any infringement of the plaintiff's rights.

*Injunction dissolved. Bill dismissed with costs.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.